## Jerome Howe v. Charles Munson.

1. TROVER—*For Conversion of Grain in a Public Warehouse.*—The fact that grain has been stored in a public warehouse and mingled with other grain, does not defeat the title to the same, or prevent the owner from maintaining trover against one who converts it to his own use.

2. SAME—*Grain in a Common Mass.*—Where a number of persons stored oats in a warehouse, which of necessity became mixed with quan-

tities of other oats of like quality belonging to others, each individual retains his title and is entitled to retain the control and ownership of his particular portion of the whole, and neither of the parties has the right to dispose of another's share of the entire mass without being guilty of a conversion.

Trover.—Appeal from the Circuit Court of Marshall County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the December term, 1895. Affirmed. Opinion filed June 1, 1896.

BARNES & BARNES and WINSLOW EVANS, attorneys for appellant.

The distinction between the obligation to restore the specific things and the obligation to return other things of the like kind and equal in value, holds in cases of hiring as well as in cases of deposits and gratuitous loans. In the former cases, it is a regular bailment; in the latter, it becomes a debt or innominate contract. Lonergan v. Stewart, 55 Ill. 44, 49; Story on Bailments, Sec. 439.

"Where goods are ponderous, and incapable of being handed over from one to another, there need not be an actual delivery; but it may be done by that which is tantamount, such as the delivery of the key of a warehouse in which the goods are lodged, or by delivery of other *indicia* of property." Chaplin v. Rogers, 1 East, 192.

On sale of brick-kiln it is not necessary to remove it to constitute delivery as to third persons. Mere acts of ownership are sufficient. Piner v. Cover, 55 Ill. 391.

At common law receipts given by a warehouseman for chattels in his possession stand in the place of the property itself. A delivery of the receipt has the same effect in transferring the title to the property as the delivery of the property. Burton v. Curyea, 40 Ill. 320; Northrop v. First National Bank, 27 Ill. App. 527, and cases cited.

On a sale of chattels, whether by bill of sale, by mortgage, by deed of trust, or on a verbal sale, the title vests and becomes complete against creditors, etc., by a delivery to the purchaser, mortgagee, trustee. Possession of chattels is notice of ownership.

The delivery of possession is as effectual as the acknowl-

edgment and recording of the chattel mortgage. Wilson v. Pearson, 20 Ill. 81, 88.

Where two different persons each have an equal right to the possession of personal property, either as purchasers from the owner or mortgagees from the owner, the first in possession is the stronger in right and entitled to hold such property. Frank v. Miner, 50 Ill. 444.

The rule is, when one of two innocent parties must be a loser, then *qui prior est tempore potior est jure.* Broom's Legal Maxims, 358, 359.

Fred. S. Potter, attorney for appellee; J. H. Jackson, of counsel.

Independent of the provisions of the constitution and statutes respecting public warehouses, it was competent for the parties to agree that the receivers might mix the wheat with other of the same grade, and hold for the deliverer at his risk an equal amount of that grade, with or without compensation, until it should be called for by him, or they should agree with him to take it as purchasers; and that the delivery under that arrangement would be only a bailment. Ardinger v. Wright, 38 Ill. App. 101; Kimberly v. Patchin, 19 N. Y. 330; Dole v. Olmstead et al., 36 Ill. 150; 41 Id. 344; Benjamin on Sales (Corbin's Notes), Secs. 478 and 483, p. 433 and 437.

Mr. Justice Crabtree delivered the opinion of the Court.

This was an action of trover to recover the value of three thousand and sixty-three bushels and four pounds of oats, which appellee claims that appellant wrongfully took from him and converted to his own use. The evidence shows that these oats at the time of their alleged conversion were worth twenty-seven cents per bushel. The case was tried by the court below, without a jury, issues found for appellee, and judgment in his favor for $845.95 damages, and for costs. From the evidence it appears that one Joseph Reynolds was a grain buyer at Evans, in Marshall county; that

he had two warehouses, or elevators, in which grain was received for storage; one called the "East House," and the other the "West House." In the former he received grain from appellee and others, free of storage. In the west house, if grain was left for a longer period than sixty days storage was charged. Appellant was a banker at Wenona, and advanced $3,000 to Reynolds with which to purchase oats, and took a note from Reynolds for that amount. To secure the payment of this note, Reynolds gave appellant a warehouse receipt for 13,000 bushels of oats. Appellee stored in the east warehouse 3,300 bushels of oats, which by agreement with Reynolds, were to be stored free, but at the risk of owner from loss by fire. Appellee procured insurance upon his oats, although they were mixed with a large quantity of others of the same grade, stored in the bins of the warehouse. Appellant becoming afraid of the security of these warehouse receipts, determined to take actual possession of the oats, and applied to Reynolds for that purpose. Appellant went to the warehouse with Reynolds, and tacked notices on the bins in both the east and west elevators, which notices stated that such bins contained oats belonging to Jerome Howe, the appellant. There were then about 18,000 bushels of oats in the east house, besides a large quantity stored in the west house. It appears that Reynolds shipped out a good many oats, part of which were taken from the east elevator and part from the west. The proceeds of the sales of these oats so shipped out were applied by appellant and Reynolds, partly in payment of the $3,000 note, and partly as a credit to Reynolds on his open bank account with appellant. When all the oats except about 7,000 bushels had been shipped out of the east house, appellant replevied the remainder, sold them, and converted the proceeds to his own use. It is insisted the transaction between appellee and Reynolds was a sale—that the warehouse was not a public warehouse within the meaning of the statute, and when the grain became mixed with the other grain therein, so that it could not be identified, appellee lost his title thereto, and could not maintain trover for

the conversion thereof. But there was evidence, we think, from which the court was warranted in finding that this was a public warehouse, and the fact appellee's oats were mixed with others of like quality, did not defeat his title thereto. In the west house oats were stored for a compensation, and that might very properly be considered a public warehouse within the meaning of the statute. Reynolds was carrying on a general grain business, using both houses or elevators as he might find most convenient. There would seem to be no good reason for so separating them as to hold one to be a public and the other a private warehouse. In both, grain was received for storage, to be mixed with other grain of like quality, the owners to retain the title to their respective portions thereof. But whether these were public warehouses or not, we think it may with reason be held that even at common law under the facts appearing in this case appellee retained his title to the oats in question. Reynolds had stored a large quantity of his own oats in the east house, and by agreement with appellee and others they were allowed to store their grain in the same warehouse, with the understanding it should be put into common bins, mixed with other grain of like quality, each owner to take the risk of loss by fire as to his own proportion of the common mass. Under this arrangement, appellee stored in the east warehouse 3,300 bushels of oats, and Reynolds gave him a receipt therefor as follows:

"EVANS, August 10, 1893.

Received in store from C. D. Munson 3,300 bushels of mixed oats, subject hereon to order of the said C. D. Munson and the surrender of this receipt, at owner's risk of fire, &c. Said grain is stored in East Warehouse.

J. REYNOLDS."

Appellee swears that Reynolds told him he could haul in the oats, and store them in the warehouse, free of storage, as long as he wanted to, at his own risk from fire. In this he is corroborated by Reynolds, who nowhere swears that he had purchased, or agreed to purchase, appellee's oats. As we have already stated, these oats were mixed with a

large number of others of like quality, belonging to Reynolds and others, and appellee procured insurance on his portion at his own cost. We think, under the above facts, each individual owner would be entitled to retain the control and ownership of his particular portion of the whole, and neither of the parties in interest would have the right to dispose of the other's share of the entire mass; and if he did so, trover would lie for the conversion.

In the case of German National Bank v. Meadowcroft, 95 Ill. 124–9, it is said: " Suppose two persons were, by consent, to mingle their grain, and one were to sell the entire quantity, could it be maintained that the other had no action to recover for the loss, or that trover would not lie against the seller or the buyer? It is perfectly apparent that he might maintain trover. By the intermixture, neither would lose his legal title to the property, as that undeniably remained as it was before."

This rule is entirely applicable to the facts of the case under consideration. There is no pretense there was any actual sale of the oats, or any contract to sell, by appellee to Reynolds, the only contention being that the transaction amounted to a sale in law; but we think, under the evidence, this contention is not sustained. Unless the law imperatively required it we would not be inclined to hold that appellee had no right in the oats left in store. Appellant could obtain no greater rights in the oats than Reynolds had. When he attempted to take possession of all the oats in both warehouses, his receipts called for 13,000 bushels, and there were at that time over 18,000 bushels stored in the east warehouse alone, besides a large quantity in the west warehouse. Reynolds swears that he and appellant went to the east warehouse and looked over the bins and the dimensions of the house, and appellant said: " You must have 20,000 bushels," and Reynolds replied, "No, it is a little over 18,000; " and at the same time he says he informed appellant that a part of these oats were stored by various parties, and that he (appellant) could take a part in the east house and the balance in the west house.

It thus appears that appellant was fully informed of the fact that others besides himself and Reynolds had an ownership in the oats in the east warehouse. He also knew that his receipts for 13,000 bushels did not authorize him to seize 18,000 bushels of oats, part of which belonged to others, and were simply in the warehouse for storage. Certainly it can not be claimed that the equities of appellant were superior to those of appellee. There is no reason why appellant should be permitted to take the property of appellee to pay any debt which might be owing to him from Reynolds.

We think the judgment was just and right and should be affirmed.