## Charles J. Yockey v. Charles P. Smith.

1. EVIDENCE—*Tending to Show the Character of Warehouses.*—In an action of replevin for the recovery of grain stored in an elevator, evidence that the proprietor was in the habit of receiving grain during the previous year, in store, for a compensation, and that a notice was posted in the warehouse to the effect that storage would be charged on all grain in store after November 1st, is competent as tending to bring the elevator within the definition of a public warehouse.

2. REPLEVIN—*For Grain Stored in an Elevator.*—Where grain is received and stored in an elevator under an agreement that it should be stored free of charge until November 1, 1897, and storage should be charged after that time, the grain to remain subject to the control or order of the owner, such owner does not lose his title to the grain and is entitled to recover it in an action of replevin.

Replevin, for grain stored in an elevator. Trial in the Circuit Court of La Salle County; the Hon. HARVEY M. TRIMBLE, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899.

WIDMER & WIDMER, attorneys for appellant, HENRY MAYO, and BUTTERS, CARR & GLEIM, of counsel, contended that, by the common law, where there is no obligation to restore the specific property delivered, and the receiver is at liberty to return another thing of equal value, or the money value, he becomes a debtor to make the return, and the title to the property is changed, it is a sale of that property. Lonergan v. Stewart, 55 Ill. 44; Richardson v. Olmstead, 74 Ill. 213; Chickering v. Bastress, 130 Ill. 206; Wetherell v. O'Brien, 140 Ill. 146; Grier v. Stout, 2 Ill. App. 602; Mostoller v. Dubois, 38 Ill. App. 644.

And, by the common law, where one party by means of contract, but without notice to the world, retains the real ownership of chattels to himself, but causes the ostensible ownership to be in another, the law will postpone the rights of the former to those of innocent purchasers, and execution creditors of the latter. Van Duzor v. Allen, 90 Ill. 499; Williams v. Fletcher, 129 Ill. 356; Hadfield v. Berry, 28 Ill. App. 376.

Where the apparent owner of personal property has the *indicia* of ownership, and may sell and pass a good title to an innocent purchaser, a *bona fide* creditor may seize the property on execution and pass title, not only against the apparent, but also the real owner. Van Duzor v. Allen, 90 Ill. 499; Chickering v. Bastress, 130 Ill. 206.

Chas. S. Cullen, attorney for appellee.

Trover will lie for the conversion of grain which, with the consent of the owner, has been mixed with other grain of like character so as to have lost its identity. Each depositor is a tenant in common with the others in the whole quantity so mixed. German National Bank v. Meadowcroft, 95 Ill. 124; National Bank of Pontiac v. Langan, 28 Ill. App. 401; Haddix v. Einstman, 14 Ill. App. 443; Riebling v. Tracy, 17 Ill. App. 158; Broadwell v. Howard, 77 Ill. 305; Howe v. Munson, 65 Ill. App. 674; Ardinger v. Wright, 38 Ill. App. 98.

A contract to receive grain in store for a compensation to accrue in the future will constitute the warehouseman a public warehouseman as to that particular grain within the meaning of the constitution of this State. National Bank of Pontiac v. Langan, 28 Ill. App. 401; Howe v. Munson, 65 Ill. App. 674.

Independent of the constitution and statutes, under the contract, the warehouseman acquired no title to the grain; it was a bailment and not a sale. Howe v. Munson, 65 Ill. App. 674; Dole v. Olmstead, 36 Ill. 150; Ardinger v. Wright, 38 Ill. App. 98; German Nat. Bank v. Meadowcroft, 95 Ill. 124; Cool et al. v. Phillips et al., 66 Ill. 216; Rice v. Nixon, 97 Ind. 97; Battenberg v. Nixon, 97 Id. 106; Sexton v. Graham, 53 Ia. 181; Ledyard v. Hibbard et al., 48 Mich. 421; Schindler et al. v. Westover, 99 Ind. 395.

If a bailee of goods for a particular purpose transfers them to another in contravention of that purpose, the general owner may maintain trover against that person, even though he be a *bona fide* vendee. Burton v. Curyea, 40 Ill. 320; Fawcett v. Osborn, 32 Ill. 425; Howe v. Munson, 65 Ill. App. 674; Cool et al. v. Phillips et al., 66 Ill. 216.

MR. JUSTICE CRABTREE delivered the opinion of the court.

This was an action of replevin by appellee against appellant to recover the possession of 4,955 bushels of corn and 211 bushels of oats which had been stored by appellee in the elevator of Robert T. Harrington at Marseilles, Illinois, and which had been levied upon and seized by appellant as sheriff, under an execution against Harrington.

The declaration contained counts in the *cepit* and *detinet*, and the grain not having been found, there was a count in trover. Appellant pleaded *non cepit, non detinet*, not guilty, and property in Robert T. Harrington, and also a special plea justifying the taking and detention by virtue of an execution against Robert T. Harrington in favor of the First National Bank of Marseilles, Ill., and alleging the property of the grain to be in Harrington and not in plaintiff. Issues were joined on these pleas and a traverse of the special plea. The cause was tried by a jury who returned a verdict finding appellant guilty and assessing appellee's damages at $1,241.06. Motions for new trial and in arrest of judgment were interposed, but overruled by the court and judgment entered on the verdict. Appellant prosecutes this appeal.

It appears from the evidence that Harrington was a grain dealer at Marseilles, buying, shipping and selling grain on his own account. That he operated two elevators, one known as the Harrington or Railroad Elevator, and the other as the Schroeder Elevator. Appellee, being the owner of about 3,000 bushels of oats and 5,000 bushels of corn, hauled it to, and stored the same in the elevators operated by Harrington, under an agreement, as appellee claims, that it was to remain his grain, subject to his own order, until such time as he saw fit to sell the same; but subject, however, to a charge of one quarter of a cent per bushel per month, after the first day of November, if left until that time. The grain was delivered from time to time, commencing in June and ending September 29, 1897. In July 2,700 bushels of the oats were sold to Harrington, but there is no evidence he purchased any other portion of the grain, nor does he claim to have done so. The execution

upon which appellant seized the grain, came into his hands on October 1, 1897, and was levied the next day. The property was sold and the proceeds applied in satisfaction of the execution and other executions which appellant had received against Harrington October 1 and 2, 1897. Demand was made by appellee on October 11, 1897, and, on refusal to deliver up the property, this suit was brought.

It is contended by appellant that Harrington was not doing business as a public warehouseman, and that the grain in controversy was not held by him in store for a compensation, and that therefore the elevators were not public warehouses. Appellee offered to prove by a witness who had been in the employment of Harrington for seven years last prior to the levy of the execution, and who was familiar with Harrington's manner of receiving grain at his elevators, that he was in the habit of receiving grain during 1897 in store for a compensation, and that a notice was posted in the warehouses to the effect that storage would be charged on all grain in store after November 1st. The court, as we think, erroneously excluded this evidence, which, if true, would have brought Harrington's elevators within the definition of a public warehouse as recognized in all the cases on that subject. This evidence being kept out on the objection of appellant it seems hardly fair for him to complain now that the evidence does not show that Harrington received grain in store for a compensation. But whatever may have been the fact in other cases a clear preponderance of the evidence shows that the grain in controversy was received by Harrington under an agreement with appellee that it should be stored free of charge until November 1, 1897, and storage should be charged after that time, the grain to remain subject to the control or order of appellee; that there was no sale nor agreement to sell. True, there was probably the expectation by both parties that Harrington would eventually purchase the grain, but the transaction, as proven, did not amount to a contract of sale. Nothing appears to have been said as to whether the grain should be kept separate, or mixed with

other grain of like character, and no doubt appellee knew when he delivered it that it was being mixed with other grain, but we are not inclined to hold that he thereby lost the title to his individual share of the mass of grain thus commingled. The facts in this case are not materially different to those in Howe v. Munson, 65 Ill. App. 674, except that in the case cited there was more proof that grain was received in store for a compensation than there is in the case at bar. We held in that case, under the evidence, appellee might retain his title to the grain in question even at common law. And in this case whether Harrington was the keeper of a public warehouse or not, we think upon the facts appellee did not lose his title to the grain and was entitled to recover. It can make no difference that no compensation had in fact accrued. Appellant seized the grain before the time arrived when, under the agreement, storage was to be charged. Up to that time the only compensation Harrington received was the probability that he would have an opportunity to purchase and handle the grain. There was nothing to mislead the creditors of Harrington, and there is no just reason why the grain of appellee should be taken to pay Harrington's debts. We are of the opinion the judgment is right and it must be affirmed.