ORLANDO WEEKS *vs.* FESSENDEN E. HACKETT and Trustee.

EDWIN E. MORTON *vs.* SAME.

## Franklin.    Opinion June 11, 1908.

*Trover.    Treasure-Trove.    Title Thereto.    Joint Finders.    Rights and Duties of*
*Joint Finders.    Conversion.    Tenants in Common.    Revised Statutes,*
*chapter 100, section 10, et seq.*

The absolute and unqualified ownership of a chattel is not essential to enable one to maintain trover for its conversion. Either a general or special property in a plaintiff at the time of the conversion is sufficient.

With respect to things so far indivisible in their nature that the share of one cannot be distinguished from that of the other, it is a well established rule that one tenant in common cannot maintain trover against his co-tenant for the reason that the two are equally entitled to possession, but this rule does not apply to such commodities as are readily divisible by count or measure into portions absolutely alike in quality, such as grain or money.

The rule of the common law respecting the rights and duties of the finder of lost money or goods has been variously modified by the terms and provisions of local statutes of many States, but the provisions of Revised Statutes, chapter 100, section 10, and those following, have no reference to the law of treasure-trove.

Treasure-trove is a name given by the early common law to any gold or silver in coin, plate or bullion found concealed in the earth, or in a house or other private place, but not lying on the ground, the owner of the discovered treasure being unknown.

In the absence of legislation upon the subject, the title to treasure-trove belongs to the finder as against all the world except the true owner, and ordinarily the place where it is found is immaterial.

The owner of the soil in which treasure-trove is found acquires no title thereto by virtue of his ownership of the land.

When several persons are joint finders of treasure-trove consisting of coin, each such finder is entitled to the possession of an equal share of such coin and is charged with the duty of holding it for the true owner, if he can be ascertained, and is under obligation to exercise reasonable care to safely keep his share of it and be prepared to restore it to the true owner whenever he may appear, and is therefore authorized to maintain such action as may be necessary to retain or recover possession of such share, and if one such joint finder having possession of all the coin, refuses to surrender to the other joint finders their respective shares thereof it is a conversion

of their shares as tenants in common and each such other joint finder may maintain an action of trover, for his share, against the co-tenant who having possession of all the coin, refuses to surrender such share.

In the case at bar, the plaintiffs each brought an action of trover against the defendant for the alleged conversion of their respective shares of certain silver coins contained in three metallic cans found buried in the ground. The defendant contended, among other things, that he found the coins under circumstances which made him the sole owner of them as against the plaintiffs. *Held :* That the evidence warranted the jury in finding that the discovery of the three cans should be deemed one transaction and that the participation of the plaintiffs in the discovery of the coins was sufficient to constitute them joint finders with the defendant.

On exceptions and motions by defendant.    Overruled.

Actions of trover, one by each plaintiff, brought to recover one-third in value of a certain quantity of coins of the United States and of certain foreign coins, alleged to have been found by each plaintiff jointly with the other plaintiff and with the defendant in three metallic cans buried and concealed in the soil and underneath the surface of land owned by one Leonard J. Hackett in the town of New Vineyard.

Plea in each case, the general issue with the following brief statement in each case :

" 1.    Defendant claims and says he is the owner of the property sued for, and that he found it under such circumstances as makes him the owner of the same as against the plaintiff.

" 2.    That if the plaintiff found any part of the same, which the defendant denies, then he is a joint owner, or co-tenant with the plaintiff; and that defendant holds the money in trust for the real owner or party that deposited the same in the ground.

" 3.    Defendant claims by purchase of one Leonard J. Hackett, who was the owner of the land where the money was found, all the right, title and interest of the said Leonard J. Hackett, in and to the property sued for."

Tried together at the September term, 1907, Supreme Judicial Court, Franklin County.    Each plaintiff recovered a verdict for $291.20.    The defendant excepted to certain rulings made by the presiding Justice during the trial and also filed general motions to have the verdicts set aside.

All the material facts are stated in the opinion.

*Frank W. Butler*, for plaintiffs.

*Joseph C. Holman*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, PEABODY, SPEAR, CORNISH, KING, JJ.

WHITEHOUSE, J. These were actions of trover brought by each of these plaintiffs to recover one-third in value of a certain quantity of coins of the United States and of certain foreign coins, alleged to have been found by each plaintiff jointly with the other and with the defendant Fessenden E. Hackett. It is not in controversy that the coins in question of the aggregate par value of $1,284.67 were found contained in three metallic cans buried and concealed in the soil and underneath the surface of land owned by one Leonard J. Hackett in the town of New Vineyard; and it appears in evidence that after the coins were found and prior to the commencement of these actions, the defendant Fessenden E. Hackett, purchased all the right, title and interest, if any, which Leonard J. Hackett had in and to these coins as owner of the land where they were found.

Three contentions were set up in defense.

1. That the defendant found the coins under circumstances which made him the sole owner of them as against these plaintiffs.

2. That if the plaintiffs participated in the finding, they are joint tenants or tenants in common with the defendant, that he is entitled to hold the coins in trust for the true owner, and that the plaintiffs as tenants in common cannot maintain trover against him for their respective shares.

3. That the defendant became the sole owner of the coins by purchase from Leonard J. Hackett, the owner of the premises where they were found.

The presiding Justice did not sustain the legal propositions involved in these contentions of the defendant, but instructed the jury in substance that gold or silver coin deposited in the soil as this appeared to have been, became what is known in law as

treasure-trove the title to which does not pass with the soil, and that the owner of the premises where the coin was found acquired no title to it by virtue of his ownership of the land, and that the defendant consequently acquired no title by purchase from Leonard J. Hackett; that if the coin was purposely buried in the soil and forgotten or its place of concealment remained undisclosed by reason of the death of the depositor, the finder acquired a right to the possession of it and a qualified property in it, subject to the right of the true owner when he appeared and in that sense became a trustee for the owner, but if several participated in the finding so as to become joint finders with equal rights, the owner-ship pertained to all of them, and one of them was not authorized to hold exclusive possession as against his fellows; and finally, that since the coins were separable and divisible by weight or count, if the defendant refused to deliver to each of such tenants in com-mon the share to which he was entitled, an action of trover would lie against the defendant for the conversion of such number or por-tion of the coins as rightfully belonged to each of the joint finders.

The jury returned a verdict in favor of each plaintiff for the sum of $291.20, being one-third of the aggregate market value of the coins, and the cases come to the Law Court on exceptions to these instructions and on a motion to set aside the verdicts as against the law and the evidence.

1.　It is the opinion of the court that the instructions given by the presiding Justice were correct and that the exceptions must be overruled.

Treasure-trove is a name given by the early common law to any gold or silver in coin, plate or bullion found concealed in the earth, or in a house or other private place, but not lying on the ground, the owner of the discovered treasure being unknown. 1 Black, 295. Cyc. Vol. 19, page 339; A. & E. of Law, Vol. 28, page 472; *Livermore* v. *White,* 74 Maine, 452; *Sovern* v. *Yoran,* 16 Or. 269, 8 Am. St. Rep. 293. To what extent the doctrine of the English common law in regard to treasure-trove has been merged, in this country, into the law respecting the finding of lost property, and whether in modern commercial life, the term treasure-trove may be

held to include not only gold and silver, but the paper representatives of them, are questions not necessary to be considered here; (See *Huthmacker* v. *Harris*, 38 Pa. St. 499 and *Danielson* v. *Roberts, et al.*, 44 Oreg. 108, 74 Pac. 913) for while it is not in controversy that the coins here in question clearly fall within the common law definition of treasure-trove, the general rule is established by a substantially uniform line of decisions in the American States, with respect to both lost goods, properly so termed, and treasure-trove, that in the absence of legislation upon the subject, the title to such property belongs to the finder as against all the world except the true owner and that ordinarily the place where it is found is immaterial. *Lawrence* v. *Buck*, 62 Maine, 275; *Durfee* v. *Jones*, 11 R. I. 588; *Hamaker* v. *Blanchard*, 90 Pa. St. 377; *Bowen* v. *Sullivan*, 62 Ind. 281 (30 Am. Rep. 172); *Danielson* v. *Roberts*, 44 Or. 108 (74 Pac. 913); *Armory* v. *Delamarie*, 1 Strange, 504 (1 Smith's Lead. Cases. 631); *Bridges* v. *Hawkesworth*, 7 Eng. Law & Eq. 424; 21 L. J. Q. B. 75. The owner of the soil in which treasure-trove is found acquires no title thereto by virtue of his ownership of the land. *Reg.* v. *Thomas*, Leigh & Cave Eng. Cr. cases; 28 A. & E. Enc. of Law, (2d. Ed.) 473. According to Bracton, lib. 3. cap. 3, as quoted in Viner's Abridgment, "he to whom the property is shall have treasure-trove, and if he dies before it be found, his executors shall have it, for nothing accrues to the King unless when no one knows who hid that treasurer;" and according to Lord Coke (3 Inst. 132), the common law originally left treasure-trove to the person who deposited it, or upon his omission to claim it, to the finder. 2 Kent's Com. 458. The rule of the common law respecting the rights and duties of the finder of lost money or goods has been variously modified by the terms and provisions of local statutes of many States, but the provisions of the Maine Statutes (R. S., ch. 100, sect. 10, et seq.) have no reference to the law of treasure-trove.

In *Danielson et al.* v. *Roberts, et al.*, 44 Or., supra, in which the facts were strikingly analogous to those at bar, two boys unearthed on the defendant's premises an old tin can containing gold coin of

the value of $7000. The circumstances under which the money
was discovered, the rust-eaten condition of the can in which it was
contained, and the place of deposit, tended strongly to show that it
had been buried for a long time, and that the owner was probably
dead or unknown.   It was held that the fact the money was found
on the premises of the defendants, in no way affected the plaintiffs'
right to possession or their duty in relation to the treasure, and
that they could maintain trover therefor against the defendants to
whom they had been induced to deliver the money.   In a well-
reasoned opinion, the court say:   "Ever since the early case of
*Armory* v. *Delamarie*, 1 Strange, 504, where it was held that the
finder of a jewel might maintain trover for the conversion thereof
by a wrongdoer, the right of the finder of lost property to retain it
against all persons except the true owner has been recognized.   In
that case a chimney sweeper's boy found a jewel, and carried it to a
goldsmith to ascertain what it was.   The goldsmith refused to
return it, and it was held that the boy might maintain trover on the
ground that by the finding he had acquired such a property in the
jewel as would entitle him to keep it against all persons but the
rightful owner.   This case has been uniformly followed in England
and America, and the law upon this point is well settled.   *Sovern*
v. *Yoran*, 16 Or. 269, 20 Pac. 100, 8 Am. St. Rep. 293; 19
Am. & Eng. Ency. Law, (2nd Ed) 579.   But it is argued that
property is lost in the legal sense of that word only when the
possession has been casually and involuntarily parted with, and not
when the owner purposely and voluntarily places or deposits it in a
certain place for safe-keeping, although he may thereafter forget it,
and leave it where deposited, or may die without disclosing to any
one the place of deposit."

"But at the present stage of the controversy it is immaterial
whether the money discovered by plaintiffs was technically lost
property or treasure-trove, or, if treasure-trove, whether it belongs
to the State or the finder, or should be disposed of as lost property
if no owner is discovered.   In either event the plaintiffs are entitled
to the possession of the money as against the defendants, unless the
latter can show a better title.   The reason of the rule giving the

finder of lost property the right to retain it against all persons except the true owner applies with equal force and reason to money found hidden or secreted in the earth as to property found on the surface."

In *Durfee* v. *Jones*, 11 R. I. 588, the plaintiff bought an old safe and soon afterwards, through his agent, left it for sale with the defendant, who was a blacksmith. Upon examination of it soon after it was left with him, the defendant found secreted between the exterior and the lining, a roll of bank bills amounting to $165. Neither the plaintiff nor the defendant knew the money was there before it was found and the owner was unknown. The plaintiff brought suit against the defendant to recover the money, claiming that as owner of the safe, he was entitled to the money by right of prior possession. But the court held that the plaintiff "never had any possession of the money except unwittingly, by having possession of the safe which contained it; that although it was originally deposited in the safe by design, it was not so deposited after the safe became the property of the plaintiff, so as to be in the protection of the safe as *his* safe, or so as to affect him with any responsibility for it," and it was accordingly held that the plaintiff as finder of the money, was entitled to retain it as against the defendant, the owner of the safe, and as against all the world except the real owner.

In *Bowen* v. *Sullivan*, 62 Ind., supra, the plaintiff while engaged as an employee in the defendant's paper mill found two fifty dollar bank bills, in a clean unmarked envelope, in a bale of old paper which the defendant had bought for manufacture, and delivered the bills to the defendant for the purpose of ascertaining if they were good and upon his promise to return them. The defendant refusing to return them, the plaintiff brought suit to recover their value, and the court held that she was entitled to recover, citing among other cases, *Lawrence* v. *Buck*, 62 Maine, 275; *Durfee* v. *Jones*, 11 R. I. 588, and *Armory* v. *Delamarie*, 1 Strange, 505, supra, and stating that the place of the finding was ordinarily immaterial.

The result therefore seems unquestionable that in the case at bar, the coins sued for belonged to the finder or finders as against all

the world except the true owner, or his legal representatives, when discovered.    Indeed the defendant's counsel does not seriously contend to the contrary, but as already noted, he claims under the motion that the defendant was in fact the sole finder of the coins, and further insists under the exceptions that in any event, these actions are not maintainable for the reason that an action of trover will not lie in favor of one tenant in common against his original co-tenant.

With respect to things so far indivisible in their nature that the share of one cannot be distinguished from that of the other, it is undoubtedly a well established rule that one tenant in common cannot maintain trover against his co-tenant for the reason that the two are equally entitled to possession and the one who has it cannot be guilty of conversion by retaining it.    But this rule " can have no reasonable application to such commodities as are readily divisible by tale or measure into portions absolutely alike in quality, such as grain or money."    Cooley on Torts, (2 Ed.) page 533. Cessante ratione legis, cessat ipsa lex.    If A and B are tenants in common of a car load of corn and B denying A's right to any part of it, refuses to surrender his half on demand, this is deemed in law a conversion, because the commodity would be capable of exact division by weight or measure, and by refusing to surrender A's half, B exercised a dominion over it inconsistent with A's rights.    As observed by the court in *Pickering* v. *Moore*, 67 N. H. 533, " One is entitled to the possession of the whole in those cases only where it is necessary to his enjoyment of his moiety.    Here it is not necessary.    There is no more difficulty in separating one portion from another than there is in selecting A's marked sheep from B's flock.    Either may make the division.    The law is not so unreasonable as to compel a resort to the courts in order to obtain a partition which either may make without expense and without danger of injustice to his co-tenant."    See also *Fiquet* v. *Allison*, 12 Mich. 328 ; *Ripley* v. *Davis*, 15 Mich. 75 ; *Gates* v. *Bowers*, 169 N. Y. 14 ; *German Nat'l Bank* v. *Meadowcroft*, 95 Ill. 124.

It is also familiar law that absolute and unqualified ownership of a chattel is not essential to enable one to maintain trover for its conversion. Either a general or special property in the plaintiff with the right of possession at the time of the conversion will be sufficient. It has been seen that in all the cases above cited in which it has been held that the finder of lost property is entitled to retain possession of it as against all the world until the rightful owner appears; it was also held that the finder had a special or qualified property in the thing found sufficient to enable him to maintain trover for its conversion against any one except the true owner.

Upon the assumption then that the plaintiffs and the defendant were joint finders and therefore tenants in common of the coin contained in the cans found in the case at bar, each was entitled to possession of one-third of it and charged with the duty of holding it for the true owner if he could be ascertained. He was under obligations to exercise reasonable care to safely keep his share of it and be prepared to restore it to the true owner whenever he might appear, and was therefore authorized to maintain such action as might be necessary to entitle him to retain or recover possession of it. The coins were readily divisible into three parts by counting and weighing, but the defendant denied the plaintiffs' rights and refused to surrender any part of the coin. This was effectually a conversion of their respective shares as tenants in common, and an action of trover was the appropriate remedy for each plaintiff.

2. Under the motion the defendant insists that he discovered the cans under circumstances that constitute him the sole finder of the coins. But under instructions upon this point to which no exceptions were taken, the jury evidently reached the conclusion that the plaintiffs participated in the discovery so as to become joint finders with the defendant with equal rights in the property found. They awarded to each plaintiff $291.20, and this appears to have been precisely one-third of the aggregate market value of all the coin. As it satisfactorily appears that the quantity of coin in any one can was not of the same value as that in any other, the jury must have decided that there was a joint finding by all and not a

separate finding of a single can by each. And the question now is whether this conclusion of the jury was warranted by the evidence.

A mill owned by Leonard J. Hackett had been destroyed by fire including a small building fourteen feet distant from it and a covered passageway connecting it with the mill. The plaintiffs' and defendant were employed by the owner of the premises, among other things, to make an excavation about eight feet wide for a shaft-way preparatory to the erection of a new mill on the same site. At the time of the discovery of the coin, they were all engaged in digging out the gravel and small stones in the passageway connecting the old mill with the small building. It appeared in evidence that there had been some "joking" between these workmen and Mr. Sweet, a neighbor who happened to be present, with reference to a tradition that one Porter, a former owner, had buried some money on the premises; but according to the testimony in behalf of the plaintiffs, the coin was discovered under the following circumstances. The plaintiffs and defendant were working in the trench about four or five feet from each other when the defendant discovered the top of an old can, and asked Sweet, who was walking away, to come back, saying "I have found it." Thereupon the plaintiff Morton commenced to dig out the stones and gravel around the can when the defendant tried to pull it out with his hands and said "I can't lift it. I guess it is filled with sand." After further digging the plaintiff Morton took up the can when the bottom dropped out and the silver coins were seen falling from the can among the stones. The defendant exclaimed, "It is money! I wish I hadn't said anything for there will be a row over it." While digging out more stones for the purpose of picking up the coins that fell among the stones, the plaintiff Morton discovered the second can which was taken out by the defendant and Mr. Sweet. Morton continued to dig out the stones and gravel and soon uncovered the third can, the top of which, however, appears to have been first seen by the plaintiff Weeks. This can was removed by the defendant and the plaintiff Morton. The three cans were set in a triangular position about a foot equi-distant from each other, the spaces between them being filled with stones and gravel.

VOL. CIV 18

The money was turned into a pail and pan and carried to the house of Leonard J. Hackett by the defendant and Mr. Sweet, where it remained from Saturday afternoon until the following Monday when by arrangement between the defendant and the owner of the land, the money was deposited in a national bank.

The defendant's account of the finding is materially different. He testifies that the cans were standing in a row close to each other and that when he unearthed the first one and before it was taken out he discovered the other two through the openings in the stones and plainly saw the bright coins in the cans.    He expressly admits, however, that "we all had hold of those cans," and it is the opinion of the court that there was sufficient evidence to warrant the jury in accepting the plaintiffs' version of the finding, and in drawing the inference that neither the plaintiffs nor the defendant had any knowledge or belief that silver coins had been discovered until they were seen to fall through the bottom of the first can after it was taken out by the plaintiff Morton.    It may also be fairly inferred from the conduct of the parties that at the time of the discovery of the coins, neither the plaintiffs nor the defendant understood that the finder of money under such circumstances acquired any legal claim to it as against the owner of the soil where it was found.

The solution of the question thus raised respecting the rights of the several parties who participated in the discovery and removal of the cans containing the coin in dispute, is necessarily attended with some practical difficulties.    Other courts have encountered similar difficulties under analogous circumstances.

In *Keron* v. *Cashman et al.*; N. J. Eq., 1896, 33 Atl. 1055, one of several boys playing along a railroad track picked up an old stocking in which something was tied, and, after he had swung it about in play for a time, a second one of the boys snatched it or, it having been thrown by the finder, the second boy picked it up, and began striking the other boys with it.    In this way it passed from one to another, and, finally, while the second boy was swinging it, it broke open, and paper money to the amount of $775 was found therein, all then examining it together.    It was held that the money belonged to all the boys in common.    In the opinion the

court say : "This money within the stocking was therefore the lost property, and as to this money the first intention, idea, or "state of mind," as it is called in some of the authorities, arose on this discovery. As a plaything, the stocking with its contents was in the common possession of all the boys ; and inasmuch as the discovery of the money resulted from the use of the stocking as a plaything, and in the course of the play, the money must be considered as being found by all of them in common."

"All of the cases agree that some intention or state of mind with reference to the lost property is an essential element to constitute a legal "finder" of such property, and the peculiarity of the present case is that the intention or state of mind necessary to constitute the finder must relate to the lost money inclosed within a lost stocking, and not to the lost stocking itself, in the condition when first found ; and, under the circumstances established by the evidence in this case, the finder of the lost stocking was not, by reason of such finding, the legal finder of the lost money within the stocking. A decree will therefore be advised dividing the money equally between the defendants."

In *Cummings* v. *Stone*, 13 Mich. 70, the plaintiff's tug boat while towing a raft belonging to the defendant, slackened speed and on starting again the tow line, which was the property of the defendant, caught and drew up an anchor and chain which were secured and put on the raft by the defendant. And it was held that the plaintiff and defendant were joint finders of the property.

In these decisions the courts appear to have been governed by those practical considerations of fairness and conceptions of common right which influence just and thoughtful men in the ordinary affairs of life and which are in harmony with the principles of equity and not discountenanced by the rules of law. In reaching the conclusion that the discovery of the three cans should be deemed one transaction, and that the participation of the plaintiffs in the discovery of the coins was sufficient to constitute them joint finders with the defendant, the jury in the cases at bar appear to have been governed by the same equitable considerations and it is the opinion of the court that the verdicts were warranted by the evidence.

*Exceptions and motions overruled.*