Frederic E. Hammer, J.
The court has been called upon to determine the respective rights to found property, viz., $12,300 in cash. The story unfolded in the courtroom at the. trial of the action that on the 19th day of September, 1971, little Eugene, then age 12, and little Pat, then age 9, were on their way home from attending church. As little children are wont to do, the two boys passed the parking lot of an A & P supermarket located- at Rockaway Boulevard and 84th Street, in Ozone Park. Rummaging around, the children discovered a manila envelope (in a ba^) containing a lar^e bankroll of cash* *599 amid the trash and the discarded clothing located in said parking lot. The young children became excited, confused and, in their immature way, sought the assistance of friends in order to determine what disposition should be made of this “ treasure trove.” Some friends, also on their way home from church, including the defendant in this case, Antoinette, a grown young lady then 15 years of age, came to their aid and assistance. Subsequently, the envelope in the bag was picked up by Antoinette and taken to her house for parental advice. The boys tagged along. On the way, by means of the sense of touch, a gun was also found in the envelope.
The children arrived at Antoinette’s home. Antoinette, with the loot, went into the house. The little boys were told to wait outside. Sometime later, two police officers arrived at the house and the children were then advised to go to their respective homes — that Antoinette’s family would take care of the entire problem. There yas some testimony by the defendant, Antoinette, that the boys disclaimed any interest in the money and wished to sever whatever relationship they had to the money. This, however, was denied by the two little boys.
While the boys were still present in front of the house, the police officers arrived and thereafter, together with the defendant, Antoinette, and her mother, left the house and went to the station house. The money was there deposited with the police and receipt was given to Antoinette as the “ sole ” finder of this money. The little boys, wishing to share in the bonanza found, commenced, through their parents, a declaratory judgment action. The Police Department listed young Antoinette as the “finder”.
Equity delights to do justice, and that not by halves. (Black’s Law Dictionary, 4th ed.; Tallman v. Varich, 5 Barb. 277, 280.)
The established common-law principle is that a finder of property acquires a right in the found chattel or goods against the entire world except the true owner. (Hurley v. City of Niagara Falls, 30 A D 2d 89, affd. 25 N Y 2d 687.) A finder has been defined as the person who first takes possession of lost property. (Personal Property Law, § 251, subd. 5.) An intention or state of mind with reference to the lost property is an essential element to constitute a legal findet of such property. (Keron v. Cashman, 33 A. 1055 [N. J. Ch., 1896].)
Equity in its broadest and most general signification denotes the spirit and the habit of fairness, justness and right dealing which would regulate the intercourse of men with men, the rule of doin^ to all others as we desire they should do to us; *600 or, as it is expressed by Justinian, “ to live honestly, to harm nobody, to render to every man his due ”. It is, therefore, the synonym of natural right or justice, but in this sense its obligation is ethical rather than jural, and its discussion belongs to the sphere of morals. It is grounded in the precept of the conscience.
With these rules as our guideposts in equity and upon the testimony given at trial, it is the determination of this court that the lost money was not found, in a legal sense, until the plaintiffs and the defendant had, together, removed it from the parking lot. Having thus obtained possession jointly, the court, finds that each of the parties is entitled to an equal share of the money. Prior ease law of this point, though meager, clearly establishes that if several persons participated in a finding, they are joint finders with equal rights in the property found. (See Keron v. Cashman, 33 A. 1055, supra; Weeks v. Hacketf, 104 Me. 264; Felt v. Carr, 59 Pa. D. & C. 237 [1947].)
In each of these decisions, although each presents different factual situations, the courts appear to have béen governed “by those practical considerations of fairness and conceptions of common right which influence just and thoughtful men in the ordinary affairs of life and which are in harmony with the principles of equity and not discountenanced by the rules of law.” (Weeks v. Hackett, 104 Me. 264, 275, supra). In reaching the conclusion that the parties were joint finders of the $12,300, entitling each to a one-third share, the court has similarly.been governed by these considerations.
The judgment to be settled hereon shall provide that upon the expiration of the statutory period for the retention by the ' Police Property Clerk of the $12,300, the money should be delivered to each infant plaintiff and the infant' defendant in equal shares of one third each, at which time title shall vest in each of them, and said shares shall be held in a depository subject to the order of this court until each of said infants shall attain the age of 21 years.