[Filed May 7, 1888.]

JESSE SOVERN, APPELLANT, *v.* S. M. YORAN, RESPONDENT.

AT COMMON LAW THE FINDER OF LOST PROPERTY has a valid claim to the same against all the world except the true owner, and he was bound to hold it for the owner, and was liable for misdelivery; but the provisions of our statute as to lost property has modified this rule.

WHERE MONEY WAS FOUND HID IN THE EARTH AND THE SURROUNDINGS, evidence that it was intentionally deposited in the place found for safe-keeping, but the defendant not knowing to whom it belonged, and there being no marks on it or other indication by which the owner could be known, and the defendant treated it as subject to the provisions of such statute, *held,* that such money was not lost money, and not subject to distribution according to such statute.

MONEY OR GOODS THAT ARE LOST are the only kind that can be said to be found. It is property that the owner has involuntarily parted with, and not property that he has intentionally concealed in the earth for safe-keeping. It is not the purpose of our statute to treat money or goods hidden and found as lost property, when the owner is unknown, but the statute is intended to apply only to what may be properly denominated lost property. As the effect of the statute is to innovate the common-law rule in destroying the title of the owner of lost property after the lapse of a certain period, upon compliance with its provisions,

*held,* that it ought not by construction or otherwise to be extended to cases which do not come plainly within its purview, or other than those upon which the facts may be properly considered lost property.

MONEY OR GOODS WHEN FOUND, ALTHOUGH THE OWNER IS UNKNOWN, which has been hidden in the earth by the owner for safe-keeping, cannot be considered as property of which he has casually or involuntarily parted with the possession, or lost property to which the statute applies, and in such case if the finder undertakes to deal with it as lost property, his acts thereby will not impair or divest the title of the owner, or his representatives, or defeat their right to their recovery. Where the defendant, after having pursued the mode prescribed by the statute for lost property, to discover the true owner of money which had been found concealed in the earth under the floor of the barn for safe-keeping, and such means failed to ascertain to whom such money belonged, and there being no marks on it to indicate its ownership, upon the assumption that the statute applied, and that the finders would be liable to suit unless distributed according to its provisions, delivered it as therein prescribed. *Held,* that in doing this the defendant asserted no right or title of himself to the property, or dominion over it, or assumed the right to dispose of the property by virtue of any claim of title over it, but that he acted in good faith, upon the mistaken assumption that the law required him to do what was done, and was therefore not liable for conversion.

APPEAL from Lane County.

*J. K. Weatherford,* and *L. Bilyeu,* for Appellant.

*G. B. Dorris,* and *H. Y. Thompson,* for Respondent.

Trover by Sovern, as administrator of Johanna Goodchild, deceased, against defendant, for two packages of money alleged to have been the property of said decedent, and to have been converted by defendant. The defendant denied the material allegations of the complaint, and set up as a further defense the following: That on the twenty-second day of March, 1884, upon the premises owned and occupied by defendant, one Hugh Gray found a package of money containing the sum of $926.85, and one Darwin E. Yoran (defendant's son), found a package of money containing the sum of $1,000. That the said Gray and Yoran delivered the said two packages of money to defendant to be disposed of according to law, and subject to their claims as finders. That defendant in compliance with the statute concerning lost property, on the twenty-fourth day of March, 1884, gave notice in writing to the clerk of Lane County of such finding, and also on said day caused similar notices to be posted in two public places in said county as follows: One at the court house and one at the postoffice in Eugene City, and that defend-

ant caused a similar notice to be printed in the Oregon State Journal, a newspaper published weekly in said county, for the time prescribed in said statute.    That no owner or claimant of such money appeared within one year from the date of said notice.    That thereafter, on the twenty-fifth day of March, 1885, and before any notice was given to defendant of any claim to said money, and before the commencement of this action, defendant, in compliance with the aforesaid statute, delivered to the county treasurer of said county, one half of the value of said two packages of money, less the expenses, and delivered to said Gray and Yoran, the other one half of said money in the respective proportions to which each would be entitled under said statute. That said sums were delivered to defendant, and dealt with by him as aforesaid, solely as the bailee of said finders, Gray and Yoran. By way of reply, plaintiff alleged that decedent had in her lifetime placed the said packages of money for safe-keeping in the places where they had been found, and that she owned or was in the lawful possession of said premises at that time, and that therefore the money was never at any time lost, within the meaning of the statute.

On the trial it appeared that the premises mentioned had been purchased by defendant from plaintiff as administrator, at a sale of decedent's property.    Plaintiff also proved that the decedent at the time of her death occupied these premises, and was accustomed to secrete money thereabouts; that she had money corresponding with the amount found, but that its whereabouts had never been discovered; that at the time of her death she attempted to tell her daughter something about money, and indicated that it was secreted, but was too weak to state intelligently regarding it.    The circumstances of the finding of the property, as detailed by the witnesses, are stated in the opinion.

On a former trial, upon the pleadings and this evidence, a nonsuit was granted, but upon an appeal the judgment was reversed, the court in that opinion (15 Or. 644) holding that the evidence should have been submitted to the jury.    Upon the second trial in the lower court, the jury found that the decedent was the owner of the money, but also found that there had been no conversion by the defendant, and rendered a verdict in his favor.    From the judgment thereon the plaintiff appeals.

LORD, C. J. — This was an action of trover, brought by the plaintiff as administrator against the defendant, for the conversion of two certain packages of money, alleged to have been the property of the deceased. After denying the facts thus alleged, the defendant set up as a defense in substance these facts: That at the time alleged, upon the premises owned and occupied by the defendant, one Hugh Gray and one Darwin E. Yoran each found a purse of money, and that they delivered said packages to the defendant to be disposed of according to law, and subject to their claim as such finders; that the defendant as such holder of the money, in compliance with the statutes in such case, did give the required notice to the clerk of the county by posting in two public places, and by publication in the Oregon State Journal, etc.; that no owners appeared within one year from the date of said notice and claimed said sums of money, and that before any notice was given to the defendant of any claim to the same, and before the commencement of this action, in compliance with the statutes aforesaid, did deliver to the county treasurer one half of said money, and to the said Gray and Yoran the other half; that said sums of money were delivered to the defendant as bailee of said finders, and that he delivered that portion to which each was entitled, and paid over to the treasurer the respective sums as aforesaid, etc.

In the way of new matter, the reply alleged that the deceased in her lifetime placed the said purses in the places mentioned for safe-keeping, and that she owned or was lawfully in possession of said premises at said time, and that said money was never at any time lost. By the evidence in the bill of exceptions, it appears that the money in controversy was found in two cans under the floor in the barn, and that the finders were two boys, who thus substantially describe the circumstances of the finding.

One of them testifies: "There was one plank that was not nailed down, and had a small hole in it as though the rats had gnawed it; it was about two feet long; when that piece of flooring was lifted up, Hugh Gray found the can of money. We counted it, and there was $925.85 in gold and silver; afterwards I found another can about a half foot from the one Hugh Gray found; seemed to be a yeast powder can; it was about five

inches long, and had in it $1,000 in gold· coin. I took the money to my father and handed it to him." After inquiring of the boys where they had found the money, etc., the defendant testified: "I took it and brought it to the county treasurer, and related to him the circumstances, and he placed it in his safe; then I returned home." And in describing the place of the finding said: "I found that a plank had been sawed into diagonally to form a miter so it would not drop through, and a little pit had been dug six or eight inches deep, and that it had been filled with chaff and hay feed in the manger in which the cans had been placed. I then brought the money to the treasurer's safe and deposited it, and on Monday following gave the notices," etc.

The court instructed the jury, among other things, that "if the defendant was proceeding honestly under the supposition that the money was lost property, it would not of itself constitute conversion, although he was mistaken about the facts of the money being lost, and in his attempt to proceed in reference to the law of lost money," to which the plaintiff excepted.

After retiring to consider their verdict, the jury returned with this result: To the question: "Was Johanna Goodchild at the time of her death the owner of the property described in the complaint in this action?" Answer. "Yes." To the question: "Was there any conversion of the money in question by the defendant?" Answer. "No;" and also returned a verdict in favor of the defendant. From this statement it is sufficient to say that the contention of counsel for the plaintiff was that the answer of the defendant, and the evidence offered by him, establishes in law conversion, and that the court should have instructed the jury to that effect, and not as above stated. They proceed upon the hypothesis that the money was not lost, but intentionally deposited in the place mentioned for safe-keeping, and that the admitted acts of the defendant in relation thereto were inconsistent with the rights of the true owner, and in law constituted a conversion.

Ever since the decision of Lord Chief Justice Pratt, in *Armory* v. *Delaimer*, 1 Strange, 504, it seems to be settled law that the finder of lost money has a valid claim to the same against all the world, except the true owner, and generally it may be said

that the place in which it is found creates no exception to this rule. "But property," said Trunkey, J., "is not lost in the sense of this rule if it was intentionally laid on a table, counter, or other place by the owner, who forgets to take it away, and in such case, the proprietor of the premises is entitled to retain the custody. Whenever the surroundings evidence that the article was deposited in its place the finder has no right of possession against the owner of the building." (*Hamaker* v. *Blanchard*, 90 Pa. St. 379.) Strictly speaking, it may be said that before a thing can be found it must have been lost; and property which the owner has simply or intentionally laid down, or deposited in some place, and for the time forgotten where it was left or put, in legal intendment can hardly be considered as lost. "The loss of goods in legal and common intendment," said Rees, J., "depends upon something more than knowledge or ignorance, the memory or want of memory, of the owner as to their locality at any given moment. If I place my watch or pocket-book under my pillow in a bed chamber, or upon a table or bureau, I may leave them behind me indeed, but if that be all, I cannot be said with propriety to have lost them. To lose is not to place or put anything carefully and voluntarily in the place you intend, and then forget it; it is casually and involuntarily to part from the possession, and the thing is then usually found in a place or under circumstances to prove to the finder that the owner's will was not employed in placing it there." (*Lawrence* v. *State*, 1 Humph. 229.)

The distinction to be noted is between the cases in which the thing or property is actually lost, and those in which it is intentionally left or deposited in its place; cases in which, as Baron Parke said, "the taker is not justified in concluding that the goods were lost, because there is little doubt he must have believed that the owner would know where to find them again, and he had no pretense to consider them abandoned or derelict." Upon the theory that the case in hand is parallel in principle with the class last named, it may be argued that the defendant, being the owner of the property in which the money was deposited, was entitled to the possession as against the finders, and their delivery to him did not make him in law bailee for them, but

required him, as was said in *McAvoy* v. *Medina*, 11 Allen, 584, "to use reasonable care for the safe-keeping of the same until the owner shall call for it," and that when he undertook to treat it as lost property, and actually delivered one half of the money to the county treasurer and the other half to the finders, he acted in derogation of the rights of the true owner by the exercise of dominion over it, which rendered him answerable in trover for conversion.

At common law, the finder of lost property was bound to hold it for the true owner, and was liable for misdelivery. In *Isaacs* v. *Clark*, 2 Bulst. 306, Lord Coke says: "When a man doth find goods, it hath been said, and so commonly held, that if he doth dispossess himself of them by this, he shall be discharged; but this is not so, as appears by 12 E., 4th vol., 13, for he which finds goods is bound to answer him for them who hath the property; and if he deliver them over to any one, unless it be unto the right owner, he shall be charged for them, for at the first it is in his election whether he will take them or not into his custody, but when he hath them one only hath the right unto them, and therefore he ought to keep them safely; if a man, therefore, which finds goods, if he be wise, he will then search out the right owner of them and so deliver them unto him; if the owner comes unto him and demands them, and he answers him that it is not known unto him whether he be the true owner of the goods or not, and for this cause he refuseth to deliver them, this refusal is no conversion, if he do keep them for him."

The duty of the finder to ascertain who is the true owner before he makes a delivery, and his liability in case of misdelivery, is here clearly stated. But our statute, as we shall presently see, has innovated this rule, and the finder, after doing the things prescribed for the purpose of ascertaining the true owner, is required after the expiration of a year to turn over one half to the county, and entitled to keep the other half of such lost property; and in case of neglect or failure to do so, the county may bring an action against such finder to recover the same. So that if the owner should afterwards appear, such acts upon the part of the finder, done in pursuance of law, would not render him liable for conversion. Nor at common law, "if the

owner comes unto him and demands them," and he does not know him, and for this reason refuses to deliver such lost property to him, is his refusal a conversion? In such case, acting in good faith and with fairness, his mistake cannot be urged against him, and will not render him liable in trover.

In some important particulars, the facts of the case in hand are more akin to what is known as treasure trove. That is, " where any money is found hid in the earth, but not lying on the ground, and no man knows to whom it belongs." Now, the surrounding facts indicate that the money was intentionally deposited in the place where found for concealment. Until after the money was distributed as stated, the owner was unknown. So that during the possession of the defendant there was present all the elements constituting treasure trove. There was the hiding, the secrecy, that unknown owner, in fact, dead owner and unknown representatives. It is only when the owner appears or is shown that the title of the king vanishes as heir to him who was presumed to be dead; in a word, when the owner is made known, it ceases to be treasure trove. But while that fact lies hid, while the case stands of money found hid in the earth, and the owner unknown, after diligent search, and the finder treats the property as treasure trove, and then afterwards the owner appears, the only effect is to destroy the character of such property as treasure trove, and thus defeat the title of the king or sovereign; but it does not render the finder liable for conversion. His mistake, if such it may be called, like the refusal of the finder to deliver on demand lost property when the owner is unknown to him, is no conversion, for he is justified in his conduct at the time, in treating it as treasure trove by the presence of all the elements which constitute it such.

The record shows that the defendant bought the property at an administrator's sale and entered into possession, and while thus in possession, the boys found the money in the manner and under the circumstances already stated. It was delivered by them to the defendant as their agent or bailee for the purpose of ascertaining its owner. Neither he nor they knew who the owner was, nor was there any marks on the money or otherwise

by which the owner could be known. What was the defendant
to do? Here was money evidently deposited for concealment
found upon his premises, and the owner of it unknown. Our
statute provides that "if any person shall find any money, etc.,
and if the owner thereof is unknown, such person shall, within
five days after finding such, give notice thereof in writing to the
county clerk, and also cause a notice thereof to be posted in two
public places," etc. And if the amount found exceed fifteen
dollars he "shall, in addition to the preceding requirements,
within fifteen days, etc., cause notice thereof to be published in a
newspaper printed in the county, etc., and if no person shall appear
to claim the same, etc., within two months, he shall procure the
appraisal thereof by a justice of the peace," etc.; and further, "if
the owner of such lost money, etc., appear within one year after
notice given, etc., and make out his right thereto, he shall have
restitution, etc.; but if such owner shall not appear within one
year, then the finder shall pay one half, after deducting all legal
charges, to the treasurer of the county, etc., and in case of neglect
to do so on demand, 'after the expiration of the year,' the same
may be sued for by the county." (Code, §§ 3708, 3709, 3710.)

The defendant not knowing to whom the money belonged,
and there being no marks or other *indicia* by which the owner
could be ascertained, treated the money as subject to the provisions
of this statute. The language of the first section is that "if any
person shall find any money or goods, and if the owner of it be
unknown, such person shall," etc. This seems to have been
interpreted to mean that when money or goods is found and the
owner of it is unknown, it applies as well to money or goods
hidden in the earth which had been found and whose owner was
unknown as to lost property. Taking this section alone, it
might be argued that the intent is to treat property hidden and
found as lost property when the owner is unknown, or to put
them on the same footing. In a word, that it contemplates that
he who "finds" must necessarily have had no knowledge of the
existence of such money or goods until found, and the owner of
which is unknown, and that as to such person, whether the
money or goods be lost or hidden, it occupies the same relation

as to him, and could not have come into his possession except by finding, and consequently, money or goods when found may include money or goods hidden in the earth or lost upon it, and in either case, if the owner be unknown, the section cited is broad enough to cover either case.

In this view, if money be hidden in the earth for safe-keeping, unless the owner puts some marks or other *indicia* upon it by which he may be identified or made known, the finder would be justified in treating it as lost property. But this construction is hardly tenable, for strictly speaking, it is only money or goods which have been lost that can be said to be found, and the succeeding provisions of the statute make it plain and beyond all doubt that the statute was only intended to apply to lost money or goods, which as we have seen is property that the owner has casually or involuntarily parted with, and not property which the surroundings evidence that the owner deposited intentionally in the place where found for safe-keeping. As the effect of this statute is to innovate the common-law rule in destroying the title of the owner of lost property after a certain period upon compliance with its provisions, it certainly ought not, by construction or otherwise, to be extended to cases which do not plainly come within its purview, or other than those which upon the facts are properly denominated lost property. Money or goods, therefore, when found, although the owner is unknown, which has been hidden in the earth by him for safe-keeping, is not property of which he has involuntarily parted with the possession, or lost property, to which the statute applies; and in such case, if the finder undertakes to treat or deal with it as lost property his acts thereby will not impair the title of the true owner or defeat his right to recover it. But did the act of the defendant in thus treating the money constitute conversion?

It must be admitted that prior to the distribution of the money according to the statute, all the acts of the defendant by advertisement and otherwise were done, not in derogation of the rights of the owner, but to ascertain who was such owner, and for the purpose of satisfactory proof of delivering his property to him. As these means failed to ascertain to whom the

money belonged, and there being no clue by any marks to its ownership, upon the assumption that the statute governed in the premises, and that the finders would be liable to suit unless distributed according to its provisions, the defendant for them delivered one half to the county and the other half to the finders. In doing this he asserted no right or title of himself or them to the money, nor any as against the owner or his representatives who were unknown; but he acted in good faith, upon the mistaken assumption that the law required him or those for whom he acted to do what was done. The defendant did not assume the right to dispose of the property, nor to assert any dominion over it by virtue of any claim of title of his own or the finders, and consequently there was no conversion nor any prejudice to the rights of the plaintiff by the instruction complained of.

The judgment must be affirmed.