IDA MAE ZORNES, by her next friend, ETTA ZORNES, Appellee, v. R. J. BOWEN et al., Appellants.

No. 43759.

SEPTEMBER 21, 1937.

1142

Boardman & Cartwright, for appellants.

Roy L. Pell, for appellee.

HAMILTON, C. J.—This case presents a rather novel legal question, and one concerning which our court has had little to say, but the law seems to be fairly well settled, both in England and in this country, that where money is found under circumstances such as the record in this case discloses, the finder is entitled to possession as against everyone except the true owner.

There is no dispute as to the material facts. The money was concealed beneath the floor of a closet adjacent to a bedroom. It was contained in three ordinary glass fruit jars, two of which had glass lids, and one a zinc lid, with rubber bands beneath the lids. These fruit jars were placed in an ordinary granite bucket or pail. Within the bucket above the jars was a tin lid. This pail was placed in a hole dug in the ground beneath the floor of this closet. Over the bucket was placed a cement slab. Entrance was gained to this place by means of a trap door which had been cut in the floor of the closet. There were no hinges on the trap door.

Title to this real estate was acquired by Mary C. Seaver in 1908. She and her husband lived in this house until they died. Mary Seaver died in 1920 and her husband died in 1923, both

intestate. They had two children, Clara L., who married R. J. Bowen, and another daughter, Dora, who married a man by the name of Sullivan. Dora died in 1927, leaving no children. Later her husband died. R. J. Bowen acquired title to this property through tax deed in 1923, and was the owner of it at the time this money was found. He had leased the property to Etta Zornes, a widow lady, who resided in the premises with her father, and her daughter, Ida Mae Zornes. After this action was started, Clara L. Bowen died intestate, and R. J. Bowen, her husband, was appointed administrator of her estate and substituted party defendant in her stead.

This money was found in June, 1933, about a year and a half after Mrs. Zornes moved into the property. It seems that the children in the neighborhood, including Ida Mae Zornes, were in the habit of hiding in this closet as they went about their play, and finally discovered this place in the floor where the boards were sawed in two, and pried up the same. The floor was up off the ground several inches, leaving room for the children to crawl in and hide under this trap door. This little eleven year old girl discovered this hole in which this bucket was concealed, and in digging around found the cement slab and removed it, discovered this old granite pail that the rust had eaten full of holes, and these jars wrapped in cloth. They had been there so long that when exposed to the air the cloth crumbled to pieces. She took the jars to her grandfather who for a time placed them in a bureau drawer, and after consulting with a Mr. Rhodes, the money was taken to the Fidelity Savings Bank, which bank sent the paper money to Washington, D. C., for identification and redemption. The gold and silver coins which constituted the bulk of the find were put in a safety deposit box. The money was counted by the county auditor of the county in the presence of the banker, Mr. Rhodes, and the appellee and her attorney. Strange as it may seem, when this money passed through so many hands, no one saw fit to make any record of the dates upon the coins. Some of the paper money was so badly molded and decayed that the government was unable to identify its denominations and hence it was not redeemable. There was an inventory made of the contents of the jars, and the money consisted of $140 in silver dollars, $16.50 in 50-cent pieces, $4.75 in 25-cent pieces, $165 in $5 gold pieces, $340 in $10 gold pieces, $440 in $20 gold pieces, $13 in $1 currency, $4 in $2 currency, $50 in

$5 currency, and one $10 bill, making a total of $1,183.25. Immediately below this list of figures contained in this inventory is this statement: "($10.00 bill dated 1921 signed by Fawcett Nevada)". Just who Fawcett may be, or when this statement was made, or to what particular $10 it relates the record is silent. We are unable to see how we are to give this statement any weight whatever as evidence.

The provisions of chapter 515, Code of 1935, relating to lost property, were duly carried out, and there is no question raised that, if this money was lost property or money within the meaning of said chapter, the statutory provisions were not duly and legally complied with.

There is absolutely no evidence in the record as to who made the trap door in this floor. There is no evidence as to who placed the money in this hiding place. It appears from this record that Mary Seaver and her husband were poor, that he was a common laboring man, that he was unable to earn sufficient money to pay the living expenses of his family and his taxes and other extraordinary expenditures, such as paving tax, etc. The record also discloses that the daughter, Dora Sullivan, and her husband lived in a part of this house which included the bedroom off which was this closet where the trap door was discovered. The record also shows that Dora Sullivan's husband never worked. There is some inkling in the record that possibly he was a beggar. R. J. Bowen was a man who for several years made good money and was generous enough to look after his father-in-law and mother-in-law. For a number of years prior to their death he furnished them money with which to pay the taxes and paving assessments. He put Dora on a monthly allowance of $25 and paid her in all a sum of $2,100. Not only this, but he paid the burial expenses of all three of them and later paid the burial expenses of Dora's husband. Mrs. Seaver became insane prior to her death. Mr. Seaver after his wife's death continued to reside in this house with his daughter, Dora, until he passed away at a ripe old age in 1923, having become quite feeble for sometime prior to his death. Bowen looked after Dora's affairs after her death and in searching through the house found $300 concealed in an old pocketbook in a garment hanging on the wall in this closet. Defendant admits that this $300 belonged to Dora. There is some reference in the record by Mr. Bowen that neither Mr. or Mrs. Seaver ever depos-

ited money in the banks. It is also claimed that Mrs. Seaver inherited some money from an estate in 1891. The statement is also made by Bowen that they wore belts in which they concealed gold coin. This statement is hardly reconcilable with the rest of the testimony.

It was the finding of the trial court "that the money unearthed by the minor Ida Mae Zornes is treasure trove; that the old law of treasure trove is not merged in the statutory law of chapter 515, 1935 Code of Iowa; that the claim of R. J. Bowen and R. J. Bowen as administrator of the estate of Clara L. Bowen as to ownership of the money is not satisfactorily proven and is disallowed; that the right to the possession of said money, on the issues herein joined, should be established in the finder Ida Mae Zornes; that a guardian should be appointed for said minor and the money turned over to said guardian." Costs of the proceeding were taxed against the fund of money. From this order the plaintiff has not appealed. The result of this order is to leave the money in the possession of the finder as against everyone except the true owner. This, we think as heretofore stated, is in accord with the great weight of authority.

We do not deem it expedient to enter into a historical discussion of this ancient doctrine of treasure trove as this has been undertaken many times by the courts in other jurisdictions, and those interested are referred to the case of Weeks v. Hackett, decided in June, 1908, by the Supreme Court of the state of Maine, and reported in 104 Me. 264, 71 Atl. 858, 19 L. R. A. (N. S.) 1201, 129 Am. St. Rep. 390, 15 Ann. Cas. 1156; Danielson v. Roberts, 44 Or. 108, 74 Pac. 913, 65 L. R. A. 526, 102 Am. St. Rep. 627, where the matter is fully discussed and the authorities, both in this country and in England, are reviewed, which amply support the decision of the trial court.

The case is accordingly affirmed.—Affirmed.

All Justices concur.