ZECH, Respondent, vs. ACCOLA and others, Appellants.

*May 26—July 1, 1948.*

For the appellants there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill.*

For the respondent there was a brief by *John H. Rouse* of Baraboo, attorney, and *Curran & Curran* of Mauston of counsel, and oral argument by *Charles P. Curran.*

HUGHES, J.    The individual defendants constitute the "carpet rag committee" of the Ladies Aid Society of the Presbyterian church, Prairie du Sac.    One of the projects of this group was the making of rag rugs.    They procured the carpet rags sewed end to end and rolled into balls from whatever source they could, and then parceled them out to women to whom they paid an agreed amount per square yard for weaving the rags into rugs.

Early in November, 1945, the defendants Mrs. Accola and Mrs. Stelter, acting on behalf of the society, delivered to Mrs. Zech, the plaintiff, a cardboard box filled with balls of carpet

rags. On November 28, 1945, the plaintiff found concealed in the center of one ball $2,100 in bills of ten and twenty-dollar denominations, which had been neatly rolled and tied and then wrapped inside the rags. She immediately took the money to the defendants Accola and Stelter, told them of her discovery, and turned it over to them. She also advertised in two newspapers published in the county in an effort to find the true owner. No one has claimed to be such owner.

The statutes by which the defendants claim right to a portion of the money are secs. 170.07, 170,08, and 170.11.

170.07 "If any person shall find any money or goods of the value of three dollars or more and if the owner thereof be unknown, such person shall, within five days after finding such money or goods, give notice thereof in writing to the town clerk of the town in which such property was found and shall also, within said five days, cause a notice thereof to be posted up in two public places in the same town."

170.08 "Every finder of lost goods of the value of $10 or more shall, in addition to the requirements of the preceding section, within fifteen days after finding the same, cause notice thereof to be published in a newspaper printed in the county, if there be one published therein; if there be none, then such notices shall be posted up in three of the most public places in the county; and if no person shall appear to claim the same who may be entitled thereto he shall, within two months after finding such goods and before using the same to their injury, procure an appraisal thereof by a justice of the peace or the town chairman of his town, which appraisal shall be certified to by such justice or chairman and filed in the town clerk's office of such town."

170.11 "If any finder of lost money or goods of the value of three dollars or upward shall neglect to give notice of the same and otherwise to comply with the provisions of this chapter he shall be liable for the full value of such money or goods, one half to the use of the town and the other half to the person who shall sue for the same, and shall also be responsible to the owner for such lost money or goods."

As pointed out by the appellants, the question here depends upon whether the common-law doctrine of treasure-trove has

been merged in the statutory provisions relating to lost property.

Sec. 13, art. XIV, of the Wisconsin constitution provides:

"Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

Counsel for appellants urge with considerable force that the language of sec. 170.07, Stats.,

"If any person shall find any money or goods of the value of three dollars or more and if the owner thereof be unknown, such person shall," etc.,

is so broad as to indicate an intention of the legislature to include all moneys and goods, whether lost or mislaid or what might under the common law have been treasure-trove.

In *Roberts v. Barnes* (1871), 27 Wis. 422, 426, where a question arose as to the definition of "estrays" under the Wisconsin statutes, the court said:

". . . technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. . . . That where a word, having a well-known and definite meaning at common law, is used in a statute, it shall be presumed to have been employed by the legislature in that sense, unless the contrary clearly appear."

While, as counsel point out, the term "found" is used alone in sec. 170.07, Stats., it is clear from a reading of the entire enactment that the legislature was dealing with lost and found property.

"Lost property may be defined as that which the owner has involuntarily parted with through neglect, carelessness, or inadvertence. The loss of property, in legal intendment, depends on something more than the knowledge or ignorance, or the memory or want of memory, of the owner, as to its locality at any given moment. To lose is not to place or put anything carefully and voluntarily in the place one intends and

then forget it; it is casually and involuntarily to part from the possession, and the thing is then usually found in a place or under circumstances such as to prove to the finder that the owner's will was not employed in placing it there." 34 Am. Jur., Lost Property, pp. 631, 632, sec. 2.

"Treasure-trove is a name given by the early common law to any gold or silver in coin, plate or bullion found concealed in the earth, or in a house or other private place, but not lying on the ground, the owner of the discovered treasure being unknown." *Weeks*v. *Hackett* (1908), 104 Me. 264, 267, 71 Atl. 858.

The nature of treasure-trove is further amplified:

"It has been stated that in this country the law relating to treasure-trove has generally been merged into the law relating to lost property found; but there is authority which seems to hold that the old law of treasure-trove is not merged in the statutory law relating to lost property. In either case, in the absence of statute providing to the contrary the title to treasure-trove belongs to the finder as against all the world except the true owner; . . ." 36 C. J. S., Finding Lost Goods, pp. 772, 773, sec. 5.

The distinction between lost property and treasure-trove has been recognized and perpetuated by the courts of other states having statutes similar to the Wisconsin statute on lost property. *Sovern v. Yoran* (1888), 16 Or. 269, 20 Pac. 100; *Danielson v. Roberts* (1904), 44 Or. 108, 74 Pac. 913; *Vickery v. Hardin* (1922), 77 Ind. App. 558, 133 N. E. 922.

Since we conclude that there was a distinction between treasure-trove and lost property at the time of the enactment of secs. 170.07 to 170.11, Stats., we are of the opinion that it would have been natural to have included treasure-trove specifically if it were the legislative intent to affect the rights thereto.

Appellants concede that the old common-law definition has been enlarged to include the paper representation of gold and silver coin-currency. One of the chief characteristics of

treasure-trove is that it shall have been concealed by the owner for safekeeping. We are unable to distinguish between concealment in a ball of rags, as here, and concealment in bureaus, safes, and machinery. 34 Am. Jur., Lost Property, pp. 633, 634, sec. 4.

The trial court correctly sustained the demurrer to the counterclaim.

*By the Court.*—Order affirmed.

FAIRCHILD, J. (*concurring*). Leaving out of consideration the court's determination of the ultimate title to the goods if the true owner does not appear, with which determination I agree, I am nevertheless concerned about the court's treatment of the duty of giving notice which our statutes impose upon a finder. There is confusion in our statutes. Sec. 170.07, Stats., begins, "If any person shall find any money or goods. . . ." Subsequent sections refer to lost goods but in effect refer to different situations. There are cases, as usual, sustaining different rulings. Fine distinctions are often drawn between lost and mislaid goods and treasure-trove, with the duties of the finder being controlled by these distinctions regarding what he finds. Notwithstanding the confusion, the fundamental public policy underlying the law in this field is to encourage and facilitate the return of goods to the true owner. To that end, sec. 170.07, Stats. 1945, clearly imposes a duty on the finder of any money to make the fact of his finding reasonably available to the true owner. I cannot believe that the legislature intended to require a finder to publish the fact that he has found goods if those goods are lost but not if they are treasure-trove. The duty of holding found property for the benefit of the true owner for a reasonable length of time and the duty to make an attempt to find the true owner ought to be recognized whether the found property is treasure-trove or not.

MARTIN, J., took no part.