**Melio A. TONINI, and Hal A. Cervi, Administrators of the Estate of Giulio Ferroni, Deceased, Appellants,**

**v.**

**James MALONEY, County Auditor, Polk County, Iowa, et al., Appellees.**

**No. 2–56716.**

Supreme Court of Iowa.

April 16, 1975.

**92**

Melio A. Tonini, Des Moines, for appellants.

J. Blaine Phipps, Urbandale, for appellees.

Submitted to MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

RAWLINGS, Justice.

Plaintiffs, as co-administrators of the Giulio Ferroni estate, appeal from judgment on jury verdict awarding individual defendants $17,860 found by them while demolishing a vacant house. We affirm.

December 8, 1970, Everett Smith, Francis Breen and Donald Bullington (defendants), then employed by an excavation company, were engaged in razing a two story structure at 1169 Seventh Street in Des Moines. They had collapsed the upper portion and while removing resultant debris from the basement discovered paper currency totaling $17,860. Unable to ascertain ownership of the money, defendants deposited same with defendant Polk County Auditor. Shortly thereafter Melio A. Tonini and Hal Cervi, coadministrators of the Ferroni estate, commenced the instant action thereby claiming ownership of the funds. By answer defendants denied plaintiffs' right thereto.

As aforesaid trial resulted in a judgment on jury verdict adverse to plaintiffs. On appeal they contend trial court erred in excluding certain proffered testimony.

Significance of the evidence rejected requires a prefatory statement of relevant facts.

The record discloses Giulio Ferroni moved to this country from Italy in 1922. Sometime in 1955 he purchased the above designated property. The upper part was occupied by him and apparently several other tenants. After Ferroni's death, September 9, 1961, the premises were conveyed to Vey and Levohn Miller. They in turn sold the property to Merle and Bernice Clos. The described realty was finally acquired by Plastic Supply Inc. Neither decedent's predecessors nor successors in title to the real estate claim any right to the money found.

Several witnesses called by plaintiffs testified regarding Ferroni's income-related activities during the time he resided at 1169 Seventh Street. They testified to the effect decedent had, for several years, actively engaged in a lucrative bootlegging business.

Mrs. Bernice Clos, once a tenant and subsequent co-owner of the premises, testified: "I saw him have plenty of money. When I'd pay him the rent. When somebody would come to the door to get liquor or booze, he went to the basement, took money out of his pants pocket, shut the door [and] went to the basement."

Mabel Varellas, another witness for plaintiffs, testimonially stated she had talked with decedent at one time concerning money owned by him and concealed in the house. Defense counsel's hearsay objection to such conversation was sustained. Plaintiffs thereupon made an offer of proof to show decedent had told this witness that upon his death he wanted "all of his money hidden in the house to go to Hal Cervi."

Plaintiffs predicate error on the excision of this evidence.

I. Although not an issue on this appeal it appears this case was tried and submitted to the jury as a combined common law "treasure trove" and Chapter 644, The Code 1971, lost property action. In this regard, see generally Zornes v. Bowen, 223 Iowa 1141, 274 N.W. 877 (1937); Flood v. City National Bank, 218 Iowa 898, 253 N.W. 509 (1934); Schley v. Couch, 155 Tex. 195, 284 S.W.2d 333, 335 (1955); 1 Am.Jur.2d, Abandoned, Lost, Etc. Property, §§ 18–31; 36A C.J.S. Finding Lost Goods §§ 1–8.

II. Hearsay has been defined by this court as an oral or written statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. See State v. Menke, 227 N.W.2d 184 (Iowa 1975); State v. Branch, 222 N.W.2d 423, 426 (Iowa 1974); State v. Mattingly, 220 N.W.2d 865, 869 (Iowa 1974).

In support of their position plaintiffs maintain Ferroni's claimed utterance to Varellas, *supra*, was admissible to show he *knew* he had money concealed in the house, not to show he actually *hid* the money subsequently found by defendants. It is thus contended decedent's utterance was not offered to prove the truth of the matter asserted and could not therefore be hearsay. It is alternatively argued that even though the testimonially offered statement be deemed hearsay, it was admissible under the theory of reliability and necessity.

Plaintiffs' initial contention apparently rests on the rule that utterances which manifest a person's state of mind are not hearsay. In this regard we said in Crane v. Cedar Rapids and Iowa City Railway Co., 160 N.W.2d 838, 845–846 (Iowa 1968), aff'd 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969):

" 'Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, * * * and thus the hearsay rule interposes no obstacle to the use of * * oral informations * * * or any other form of verbal utterances by one person, as circumstantial evidence that *another person had knowledge* or belief as to * * * *the dangerous condition* of a place or a machine.' "

See also McCormick on Evidence, § 249 (2d ed. 1972); 29 Am.Jur.2d, Evidence, §§ 355–357.

■ We are not persuaded, however, the theory espoused above is of any aid to plaintiffs. Undoubtedly, where an individual's expressed state of mind or belief is a fact in issue, or the ultimate object to be proven, then extra-judicial utterances of such person are admissible. As McCormick on Evidence, *supra*, at 591 says:

"Thus if evidence is given that the operator of a machine stated before the accident sued on, that the brakes were defective, this would be admissible as evidence tending to show circumstantially that he knew of the defective condition, if it was defective."

On the other hand, when an individual's state of mind is of service only indirectly, i. e., as forming a second step of an inference to some other fact which is in issue or the ultimate object to be proven, the situation is entirely different. Illustratively, where the existence of a will is sought to be established, suppose the proponent thereof attempts to show the deceased had made this statement: "My will is in the iron chest." Assume also such utterance is offered in evidence for the outward purpose of showing decedent *knew* he had executed a will. In such circumstances a two-step inference flows from the deceased's "state of mind" utterance. First, the statement evidences decedent's belief he had executed a will and, second, this belief unavoidably evidences he actually had an existent will, the very fact in issue. See 2 Wigmore on Evidence, § 267 at 92 (3d ed. 1940).

Commenting upon such double inference Wigmore, *supra*, at 92–93 aptly theorizes:

"But, is not the process practically equivalent to accepting the deceased's declaration * * * in a purely assertive and testimonial fashion, *i. e.* to admitting directly [the] testimonial assertions about the will * * *, precisely as if [the decedent] were on the stand and credit [was] asked for [his] testimonial assertions to that effect? And if such evidence were allowed to come in as circumstantial, could not any and every hearsay statement be brought in upon the same plea, by resolving it into a double inference, namely, by translating A's assertion

that he saw M strike N, into an inference from his utterance to his belief and from his belief to the fact asserted? * * * [T]here is force in the argument that the pretended double inference of a circumstantial sort is equivalent to *giving credit to a testimonial assertion,* and involves therefore a danger of evasion of the Hearsay rule."

 It is to us evident the instantly involved utterance differs in no material respect from the foregoing example. In the first instance the statement evinces decedent's belief he had money hidden in the house. Next, this belief is ultimately used as self-beneficial evidence the money found had been there hidden by him, the very fact in issue. The difficulty in such a situation lies not in the first inference to be drawn but rather in the second. At this secondary stage the reliability and trustworthiness of the declarant's statement becomes all important, but cross-examination is foreclosed.

It is apparent the utterance here in question was equivalent to an out-of-court assertion of ownership by decedent. Circumstantial use of same as evincing a state of mind on the part of decedent is nothing more than a pretext to establish indirectly that which could not be proven directly.

III. Plaintiffs next contend the claimed statement was admissible because elements of necessity and trustworthiness were shown to exist. Noticeably they do not contend the statement was admissible under any well recognized exception to the hearsay rule. Rather, reliance is apparently placed on the theory that a deceased person's statements are admissible when the same information cannot be obtained in a more purified or authentic form. See 31A C.J.S. Evidence § 205 at 575.

It still remains, however, we have neither found nor do plaintiffs cite any case of this nature in which hearsay was admitted on the basis here invoked. Furthermore, this court is not now inclined to break problematical new ground in this already complex area of the law. Briefly stated, hearsay in the declarant's (Ferroni's) own interest did not instantly become admissible merely because he died after the purported statement was allegedly made. See 29 Am.Jur.2d, Evidence, §§ 617, 674; 31A C.J.S. Evidence § 205 at 573.

Mindful of the foregoing we now hold trial court correctly excluded the instantly controverted statement.

Affirmed.